IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1998 SESSION

**FILED**

**October 21, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9708-CR-00355 |
| Appellee, | * | WILSON COUNTY |
| VS. | * | Hon. J. O. Bond, Judge |
| LISA DIANE MURPHY, | * | (Solicitation to Commit First Degree |
| Appellant. | * | Murder) |

For Appellant:                     For Appellee:

Comer L. Donnell                   John Knox Walkup
District Public Defender           Attorney General & Reporter

Howard L. Chambers                 Janis L. Turner
Assistant Public Defender          Assistant Attorney General
213 North Cumberland Street        425 Fifth Avenue North
P.O. Box 888                       Nashville, TN  37243-0493
Lebanon, TN  37087

                                   Robert Hibbett
                                   Assistant District Attorney General
                                   111 Cherry Street
                                   Lebanon, TN  37087

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Lisa Diane Murphy, pled guilty to solicitation to commit first degree murder. As part of a plea agreement, the trial court imposed a Range I, ten-year sentence. The defendant appeals because the trial court denied an alternative sentence in the Community Corrections program.

We affirm the judgment of the trial court.

On May 4, 1995, the seventeen-year-old defendant gave birth to a son. She delivered the baby at her boyfriend's parents' trailer without any medical assistance. After the baby was born, the defendant's boyfriend, William Stockwell, who was the father, buried the infant near a barn. The defendant, who had previously agreed to dispose of the child so that no one would discover she had been pregnant, later claimed that she had changed her mind during labor and asked to be taken to the hospital. Stockwell was convicted of first-degree murder and received a life sentence. The defendant testified as a witness for the state.

At the sentencing hearing, Dr. Jeri Lee testified that he had examined the defendant about two weeks after she had given birth. He found that she suffered from post traumatic stress disorder (P.T.S.D.), which resulted from the trauma associated with unattended childbirth and the death of the victim. He described the symptoms of P.T.S.D. as distress and depression. Dr. Lee also determined the defendant suffered from dependent personality disorder, the primary symptom of which is "chronic and severe problem[s] making decisions." Individuals who suffer from this disorder rely on other people to "make their decisions for them." Dr. Lee testified that the defendant would be able to abide by the terms of an alternative sentence and would not be a threat to society. It was his opinion that she

2

could benefit from counseling and would be a good candidate for treatment.

The defendant, who lived with her parents, was sixteen years old at the time she became pregnant. Stockwell was twenty-two. Since the offense, she had graduated from high school and had been seeking employment. The defendant acknowledged that a condition of her pre-trial release was that she disassociate herself from Stockwell. Despite that promise, however, she had married Stockwell and had given birth to their second child. At the time of sentencing, a divorce was pending. Her parents were to get custody of her son in the event of a Department of Correction sentence.

John Johnson, principal at Watertown High School, described the defendant as an excellent student and stated that she did not present any discipline problems. Judy Murphy, the defendant's mother, testified that the defendant could continue to live with her. She and the defendant's father agreed to help the defendant meet the terms of an alternative sentence.

The trial court made the following ruling:

> I don't believe community corrections applies on anything over eight years, ... The law is very clear in 40-35-303 to this Court when it says probation, the defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight years or less. ... [T]he Court doesn't believe it's available. ... I don't have any alternative, I don't believe, under the law as it's written but to let this lady go to prison for ten years.

The defendant argues that the trial court erred by concluding that, as a matter of law, she could not serve her sentence on Community Corrections.

When a challenge is made to the length, range, or manner of service

3

of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in her own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210.

Among the factors applicable to alternative sentencing consideration are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285 (Tenn. 1978). The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant and serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). That a defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that she is entitled to be sentenced under the act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following offenders are eligible for Community Corrections:

4

(1)  Persons who, without this option, would be incarcerated in a correctional institution;

(2)  Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;

(3)  Persons who are convicted of nonviolent felony offenses;

(4)  Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5)  Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6)  Persons who do not demonstrate a pattern of committing violent offenses;  and

(7)  Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

Although one must receive a sentence of eight years or less to be eligible for probation, a defendant who is sentenced under subpart (a) of Tenn. Code Ann. § 40-36-106 is eligible for Community Corrections regardless of the length of the sentence.  "Neither the Act nor any other statute makes the length of the accused's sentence a criteria for eligibility" under subpart (a).  State v. Lanny Crowe, No. 01C01-9503-CC-00064, slip op. at 2 (Tenn. Crim. App., at Nashville, July 6, 1995).

The defendant, however, is not eligible for Community Corrections under subpart (a) because section (a)(3) excludes individuals convicted of crimes against the person.  Tenn. Code Ann. § 40-36-106(a)(3).  This court has previously held that solicitation to commit murder is a crime against the person.  State v. James Kenneth Spry, No. 01C01-9409-CC-00309, slip op. at 7 (Tenn. Crim. App., at

5

Nashville, June 15, 1995).  A defendant ineligible for Community Corrections under subpart (a) may, however, be eligible under subpart (c), which creates a "special needs" category of eligibility:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or <u>mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution</u>, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c) (emphasis added).

Under our law, a defendant convicted of solicitation of first degree murder could arguably be eligible for Community Corrections, if she can show eligibility under the "special needs" category.  In <u>State v. Staten</u>, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989), however, this court ruled that to be sentenced under the "special needs" provision, the defendant must otherwise be eligible for probation.  While subpart (a) does not require eligibility for probation, subpart (c) does.  <u>Id.</u>  This defendant is not eligible for probation because she received a ten-year sentence.  Eligibility for probation depends on the sentence being "eight (8) years or less."  Tenn. Code Ann. § 40-35-303(a).  The trial court correctly ruled that a sentence to Community Corrections was proscribed by law.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

6

CONCUR:

_____
Thomas T. Woodall, Judge

_____
Curwood Witt, Judge